

ENTERED
02/09/2017

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| JOSE ARTURO VILLARREAL JR.; aka § | CASE NO: 16-10253 | |
| VILLARREAL, *et al* § | | |
|     Debtors § | | |
| § | CHAPTER 13 | |
| § | | |
| § | JUDGE EDUARDO V. RODRIGUEZ | |

MEMORANDUM OPINION
CONFIRMING DEBTORS' CHAPTER 13 PLAN
AND
<u>DENYING THE CHAPTER 13 TRUSTEE'S MOTION TO DISMISS</u>
*[Resolving ECF No. 2]*

### I. INTRODUCTION

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("***BAPCPA***") created the hanging paragraph of 11 U.S.C. § 1325(a) (the "***hanging paragraph***"), which limits a debtor's right to bifurcate and cramdown certain claims within a chapter 13 plan. Jose Arturo Villarreal, Jr. & Miriam H. Villarreal, ("***Debtors***") propose to treat as wholly unsecured certain secured cross-collateralized claims of Security Service Federal Credit Union ("***SSFCU***") in motor vehicles purchased for the personal use of the Debtors within 910 days, and in some cases, within one year of filing bankruptcy where the amount of the secured claim exceeds the value of the vehicles. Additionally, Debtors seek to treat a claim of SSFCU as wholly unsecured where a personal motor vehicle was used as collateral for a loan to pay off an existing non-purchase money security interest loan with a different financial institution, Springleaf Financial ("***Springleaf***"). Although SSFCU has not objected, both the Debtors and the chapter 13 trustee ("***Trustee***") seek guidance as to whether the Debtors' proposed chapter 13 plan is confirmable. This Court is tasked with determining whether the hanging paragraph applies to any of the

claims of SSFCU. Accordingly, this Court now considers the parameters of the Bankruptcy Code,[1] specifically the hanging paragraph, relevant case law, and the Debtors' arguments to determine whether Debtors' chapter 13 plan is confirmable.

## II.  FINDINGS OF FACT

This Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052, which incorporates Fed. R. Civ. P. 52, and 9014. To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.

Debtors filed for relief under chapter 13 of title 11 on August 8, 2016. [ECF No. 1]. Debtors' Schedule A/B lists a 2008 Kia Sorento (the "*Kia*") with a current value of $5,425.00. *Id.* at 15. Contemporaneously with their petition, Debtors filed a chapter 13 plan ("*Plan*") in which the SSFCU claims are treated in Section No. 8. [ECF No. 2]. Section No. 8 sets forth that "the treatment of each class of secured claim to be paid under this plan is the lesser amount listed below as the "Collateral Value" and the allowed amount of the holder's claim." *Id.* at 7. The Plan lists one SSFCU claim secured by the Kia with the claim amount as $8,347.00 and the collateral value as $5,425.00. *Id.*; *see also* [Claim No. 4-1] ("*Claim No. 4*"). Pursuant to the Plan, Claim No. 4 would be paid at 5.50% interest pro-rata resulting in a total payment of $5,987.06. [ECF No. 2 at 7]. Additionally, the Debtors list four "cross-collateralized" claims for SSFCU secured by the Kia. *Id.*; *see also* [Claims No. 5-1 at 4, 6-1 at 4, 7-1 at 4, 8-1 at 4] (the "*Cross-Collateralized Loans*"). The Plan lists the amount of the claims in the Cross-Collateralized Loans as $340.00, $330.00, $22,301.00, and $3,721.00, respectively. [ECF No. 2 at 7]. Further, the Plan lists the collateral value for each of the Cross-Collateralized Loans as

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

$0.00. *Id.* Thus, the balance of SSFCU's claims, although secured, would be treated as wholly unsecured and would receive a 7% dividend. *Id.*

Debtors' Counsel, on behalf of the Debtors, filed the following five Proofs of Claim on behalf of SSFCU:

    i.    Claim No. 4 in the amount of $8,437.00. The loan was executed on October 29, 2014, which was within 910 days of filing bankruptcy. The original amount financed was $11,940.01. In Part 2, Section No. 8 of the proof of claim, it states that the basis for the claim was "Goods Sold." The claim states it is secured by the Kia. The Kia is listed in the "Collateral" section of the Security Agreement attached to the claim. In the "Itemization of Amount Financed" section of the attached Security Agreement, it states that $11,672.52 was "paid directly to: Financial Institution;"

    ii.    Claim No. 5 in the amount of $3,721.00. The loan was executed on November 14, 2014, which was within 910 days of filing bankruptcy. In Part 2, Section No. 8 of the proof of claim, it states that the basis for the claim was "Goods Sold." Part 2, Section No. 9 states that the claim is secured by the "2008 Kia Sorento (cross-collateralized)." The value of the property is listed as $0.00;

    iii.    Claim No. 6 in the amount of $22,301.00. The loan was executed on October 19, 2015, which was both within 910 days and one year of filing bankruptcy. The value of the claim is listed as $0.00. In Part 2, Section No. 8 of the proof of claim, it states that the basis for the claim was "Goods Sold." Part 2, Section No. 9 states that the claim is secured by the "2008 Kia Sorento (cross-collateralized);"

    iv.    Claim No. 7 in the amount of $330.00. The loan was executed on October 28,

        2014, which was within 910 days of filing bankruptcy. The value of the claim is listed as $0.00. In Part 2, Section No. 8 of the proof of claim, it states that the basis for the claim was "Goods Sold." Part 2, Section No. 9 states that the claim is secured by the "2008 Kia Sorento (cross-collateralized);"

    v.    Claim No. 8 in the amount of $340.00. The loan was executed on October 28, 2014, which was within 910 days of filing bankruptcy. The listed value of the claim is $0.00. In Part 2, Section No. 8 of the proof of claim, it states that the basis for the claim was "Goods Sold." Part 2, Section No. 9 states that the claim is secured by the "2008 Kia Sorento (cross-collateralized)."

[Claim Nos. 4-1, 5-1, 6-1, 7-1, 8-1]. Each of SSFCU's loans contain a cross-collateralization clause that provides:

> SECURITY AGREEMENT – You hereby grant to the Credit Union a security interest and the right of setoff in any account at the Credit Union in which you have an interest or in which you may have an interest in the future. Any property shown in the "Collateral" section on the first page of this Agreement will be security for this loan, as well as any and all increases, accessories, equipment, attachments, accessions and replacements to the property and all proceeds, insurance proceeds or premium rebates or refunds relating to the property of this Agreement. The property securing this loan also secures your repayment of all other obligations you now owe or may owe to the Credit Union at any time in the future.

[Claim No. 4-1 at 5]; [Claim No. 5-1 at 5]; [Claim No. 6-1 at 5]; [Claim No. 7-1 at 5]; [Claim No. 8-1 at 5].

On September 28, 2016, the Trustee filed a Motion to Dismiss or Convert because of alleged mathematical errors in the Plan and Debtors' alleged failure to timely file necessary amendments to the Plan. [ECF No. 23 at 1]. On October 5, 2016, this Court held a hearing on confirmation of Debtors' Plan. The Trustee stated that they were not opposed to confirmation, but raised concerns regarding whether SSFCU's claims were treated appropriately pursuant to

the hanging paragraph. The Court granted Debtors' Counsel leave to brief the issues regarding SSFCU's claims. On October 16, 2016, Debtors filed their Response to Trustee's Motion to Dismiss alleging that "all necessary amendments or documents [would] be filed before the hearing date." [ECF No. 26 at 1]. On October 26, 2016, Debtors filed a Brief in Support of Confirmation alleging that the hanging paragraph does not apply because SSFCU's claims are not purchase-money security interests. [ECF No. 27] ("*Brief*"). Specifically, Debtors contend that Claim No. 4 is not a purchase-money security interest because the Kia was used as collateral to pay off a non-purchase money security interest loan with Springleaf. *Id.* at 4. Additionally, Debtors allege that the Cross-Collateralized Loans are not purchase-money security interests because the loans were not given as part of the price of the Kia or to enable Debtors to acquire rights in the Kia as the Debtor. *Id.* at 5. On November 2, 2016, the Court held a hearing regarding confirmation and Debtors presented oral arguments in support of the Brief. Specifically, Debtors reiterated that none of the SSFCU claims represent a purchase-money security interest because the loans were not given as "all or part of the price" of the Kia and did not enable Debtors to "acquire rights in or use" of the Kia because the Debtors' already had use of and rights in the Kia as their personal vehicle. *See also id.* at 4. SSFCU has not filed any objections to Debtors' Plan. Briefing on the matter has closed and it is now ripe for consideration.

### III. LEGAL STANDARD

Bankruptcy courts have an independent duty to determine whether a chapter 13 plan complies with the Code, regardless of whether the parties object to the plan. *In re Sierra*, 560 B.R. 296, 302 (Bankr. S.D. Tex. 2016) (citing *In re Divine Ripe, LLC*, 554 B.R. 395, 410 (Bankr. S.D. Tex. 2016)). The requirements of plan confirmation are governed, in part, by the parameters

of § 1325. A chapter 13 plan that includes treatment of an allowed secured claim shall be confirmed if either the creditor accepts the plan or the debtor surrenders the property to the creditor. § 1325(a)(5)(A), (C). Additionally, a debtor may confirm a plan without a secured creditor's consent or surrendering the property if the plan complies with the requirements of § 1325(a)(5)(B). In relevant part, the court shall confirm a plan if the plan provides that:

> (I) the holder of such [a secured] claim retain the lien securing such claim until the earlier of—
>
> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>
> (bb) discharge under section 1328; . . . [and]
>
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim . . . .

§ 1325(a)(5). *See also In re Dale*, 582 F.3d 568, 570 (5th Cir. 2009) (noting that "[u]nder the code, a lien creditor generally holds a secured claim only to the extent of the present value of the collateral that the lien encumbers"). Regarding allowed secured claims, the Code instructs that:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditors interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1). The utilization of § 506 in conjunction with § 1325(a)(5)(B) is known as "bifurcation and cramdown because the secured claim is reduced to the present value of the collateral, while the remainder of the debt becomes unsecured, forcing the secured creditor to accept less than the full value of its claim." *In re Dale*, 582 F.3d at 572.

As part of Congress' enactment of BAPCPA, the hanging paragraph was added following § 1325(a)(9) to reduce a debtor's ability to bifurcate and cramdown certain secured claims. *Id*. The hanging paragraph provides:

> section 506 shall not apply to a claim . . . if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

§ 1325(a). Both exceptions of the hanging paragraph require the creditor to maintain a purchase-money security interest in the collateral. *In re McPhilamy*, 2017 WL 435802, at *10 (Bankr. S.D. Tex. Jan. 31, 2017) (following the reasoning of the majority of courts to conclude that "the entirety of the hanging paragraph only applies to purchase-money security interests"). Bankruptcy courts must apply the appropriate state law to determine whether a creditor holds a purchase-money security interest. *Id.* at *8. Under Texas Law, courts must determine whether there is a "purchase-money obligation," which is a two-pronged definition: to wit, "(i) the price of the collateral, and (ii) value given to enable the debtor to acquire rights in or use of the collateral." *In re Dale*, 582 F.3d 568, 573–74 (5th Cir. 2009) (citing Tex. Bus. & Com. Code § 9.103(a)); *In re McPhilamy*, 2017 WL 435802, at *8.

### IV. CONCLUSIONS OF LAW

#### A. Jurisdiction & Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter. 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012). In the case at bar, the Court is determining whether the Debtors' Plan is confirmable pursuant to the Code. Accordingly, this is a core matter as it pertains to the confirmation of a chapter 13 plan, which can inherently only occur in a bankruptcy case. § 157(b)(2)(L); s*ee also In Re Southmark*

*Corp.*, 163 F.3d 925, 930 (5th Cir. 1999)[2]; *In re McPhilamy*, 2017 WL 435802, at *5.

This Court may only hear a case in which venue is proper. 28 U.S.C. § 1408. In their petition, Debtors list their residence as Brownsville, Texas. [ECF No.1]. Therefore, venue is proper.

### B.  Constitutional Authority To Enter A Final Order

This Court has an independent duty to evaluate whether it has the constitutional authority to sign a final order. *Stern v. Marshall*, 564 U.S. 462 (2011). *But see Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938–39 (2015) (holding that parties may consent to jurisdiction on non-core matters). The case at bar involves the determination of whether Debtors' Plan can be confirmed by this Court. *See generally* [ECF No. 27]. Having determined that the instant case involves a core matter, this Court acknowledges the issues *Stern* presents. 564 U.S. at 473–74. "An order denying confirmation of a proposed chapter 13 plan is not a final order and therefore does not implicate the concerns raised in *Stern*." *In re Sierra*, 560 B.R. at 300 (citing *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015)). Conversely, plan confirmation "has preclusive effect" because the terms become binding on the debtor and creditors, thereby resulting in a final order. *Bullard*, 135 S. Ct. at 1692 (citing 11 U.S.C. § 1327(a)); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010). As plan confirmation is a quintessential issue created by federal bankruptcy law, this Court possess the necessary constitutional authority to enter a final order confirming Debtors' Plan. *See In re McPhilamy*, 2017 WL 435802, at *5; *In re McCarthy*, 554 B.R. 388, 389–90 (Bankr. W.D. Tex. 2016) (finding that pursuant to *Bullard* bankruptcy courts have "the authority to hear and enter orders regarding a debtor's chapter 13 plan").

---

[2] "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."

### C. The Cross-Collateralized Loans are not Subject to the Hanging Paragraph Because the Loans are not Secured by a Purchase-Money Security Interest

At the outset, this Court notes that all of the Cross-Collateralized Loans were acquired within 910 days of Debtors' bankruptcy.[3] *Compare* [Claim Nos. 5-1 at 4, 6-1 at 4, 7-1 at 4, 8-1 at 4] *with* [ECF No. 1]. Additionally, the Kia is the Debtors' personal vehicle. *See* [ECF No. 1 at 15]. Accordingly, in order for the hanging paragraph to apply, SSFCU must hold a purchase-money security interest in the Cross-Collateralized Loans. § 1325(a). This Court recently issued a decision following the standard set forth by the Fifth Circuit for determining whether a creditor retains a purchase-money security interest under Texas law. *See In re McPhilamy*, 2017 WL 435802, at *6–7 (adopting the two-pronged test set forth in *In re Dale*, 582 F.3d at 574).

Thus, this Court turns to whether any of the Cross-Collateralized Loans are for all or part of the price of the Kia or enabled the Debtors to acquire rights in the Kia. In *McPhilamy*, this Court found that in order for a vehicle loan to be considered as the "price of the collateral" the loan must have "an attenuated connection to the acquisition or maintenance of the vehicle." 2017 WL 435802, at *7 (citing *In re Dale*, 528 F.3d at 574–75). The current value of the Kia is $5,425.00. [ECF No. 1 at 15]; [Claim No. 4-1 at 2]. Further, the amount Debtors financed to pay off a loan with Springleaf is $11,940.01. *Id.* at 4. Three of the Cross-Collateralized Loans were originally for amounts significantly less than the amount required to pay off the title loan. *Compare id. with* [Claim No. 5-1 at 4] (financing a total amount of $5,116.23 for "goods sold") *and* [Claim No. 7-1 at 4] (borrowing $500.00 for "emergency expenses") *and* [Claim No. 8-1 at 4] (borrowing $2,013.26 for "goods sold"). There is not a scintilla of evidence before this Court

---

[3] Debtors entered into the loan represented by Claim No. 6 within one year of filing bankruptcy. *Compare* [Claim No. 6-1 at 4] *with* [ECF No. 1]. Regardless, the hanging paragraph's second exception does not apply to Claim No. 6 because the collateral is the Debtors' personal vehicle and a motor vehicle is not "any other thing of value" as required by statute. *In re McPhilamy*, 2017 WL 435802, at *9 (finding that the canons of statutory construction require that the phrase "any other thing of value" in the hanging paragraph does not apply to motor vehicles).

indicating that the amounts borrowed in Claim Nos. 5, 7, and 8 bear "even an attenuated connection to the acquisition or maintenance" of the Kia. *See In re McPhilamy*, 2017 WL 435802, at *7. Notably, Claim No. 6 represents a loan that Debtors originally entered into for $25,263.61, which is more than double the amount used to pay off the Springleaf loan on the Kia. *Compare* [Claim No. 6-1 at 4] *with* [Claim No. 4-1 at 4]. Although the amount financed in Claim No. 6 could satisfy the cost of paying off the Springleaf loan, that is not what occurred in this case. Debtors entered into the loan in Claim No. 6 nearly a year after using Claim No. 4 to pay off the Springleaf loan. *Compare* [Claim No. 6-1 at 4] *with* [Claim No. 4-1 at 4]. Thus, there is no evidence that Claim No. 6 loan was used to pay expenses with "even an attenuated connection to the acquisition or maintenance" of the Kia. *See In re McPhilamy*, 2017 WL 435802, at *7. Therefore, this Court finds that the Cross-Collateralized Loans were not for the all or part of the price of the Kia. *Id.*

In *McPhilamy*, this Court concluded that several cross-collateralized loans were not purchase-money security interests because there was no evidence "demonstrating a close nexus between the [d]ebtors' acquisition of the [vehicle] and the loan[s]." *Id. But see In re Dale*, 528 F.3d at 575 (finding that negative equity financing, gap insurance, and extended warranties were incurred "in connection with the buyer's goal of acquiring rights in the collateral"). All of the Cross-Collateralized Loans were paid directly to the Debtors and not to a motor vehicle lender of the Kia. *See* [Claim Nos. 5-1 at 4, 6-1 at 4, 7-1 at 4, 8-1 at 4]. Similar to *McPhilamy*, the Cross-Collateralized Loans were all executed on different days and are based on separate Loan documents. [Claim Nos. 5-1 at 4, 6-1 at 4, 7-1 at 4, 8-1 at 4]. The Debtors already had rights in the Kia and exclusive use of the Kia as a personal vehicle. *See* [Claim No. 4-1]; [ECF No. 1 at 15]. Further, none of the Cross-Collateralized Loans contain loan documents with a motor

vehicle lender, a Texas Certificate of Title, or any other vehicle information. *Compare In re McPhilamy*, 2017 WL 435802, at *7–8 *with* [Claim No. 5-1] *and* [Claim No. 6-1] *and* [Claim No. 7-1] *and* [Claim No. 8-1]. Thus, there is no evidence before this Court that demonstrates a "close nexus" between the acquisition of the Kia and the Cross-Collateralized Loans. Without such evidence, the Cross-Collateralized Loans cannot be considered to be value given to acquire the Kia. *But see In re Dale*, 582 F.3d at 574. As the Cross-Collateralized Loans were not for the price of the Kia, nor for value given to acquire rights in the Kia, the Cross-Collateralized Loans fail to satisfy either prong of the definition of "purchase-money obligation" under Tex. Bus. & Com. Code § 9.103(a). *See In re McPhilamy*, 2017 WL 435802, at *8. Therefore, the Cross-Collateralized Loans are not "purchase-money security interests" under the hanging paragraph and are treated appropriately as unsecured claims in the Plan. *See id.*

### D. Claim No. 4 is not Subject to the Hanging Paragraph Because the Loan is not Secured by a Purchase-Money Security Interest

Having concluded that the Cross-Collateralized Loans are not subject to the hanging paragraph, this Court must determine whether Claim No. 4 is treated properly under the Plan. Debtors acquired the loan represented by Claim No. 4, which is secured by the Kia, within 910 days of filing bankruptcy. [Claim No. 4-1 at 4]. Thus, as with the Cross-Collateralized Loans, this Court must determine if Claim No. 4 is a purchase-money security interest subject to the hanging paragraph. *See In re McPhilamy*, 2017 WL 435802, at *5.

First, this Court examines whether Claim No. 4 involves funds that were for the price of the Kia. *See In re Dale*, 582 F.3d at 573–74. Prior to entering into the loan in Claim No. 4, Springleaf held the Kia's title under a non-purchase money interest security interest loan. [ECF No. 27 at 4]. Debtors entered into the loan in Claim No. 4 to pay off Springleaf's loan in its entirety. *Id.* (citing [Claim No. 4-1 at 4]). As the Kia already belonged to the Debtor prior to

entering into the loan with Springleaf, the loan with SSFCU in Claim No. 4 cannot reasonably be considered as having "even an attenuated connection to the acquisition or maintenance of the vehicle." *See In re McPhilamy*, 2017 WL 435802, at *7. *But see In re Dale*, 528 F.3d at 574–75 (concluding that negative equity financing, gap insurance, and extended warranties fell within the category of 'price' of the vehicle). Therefore, Claim No. 4 cannot be said to be for either all or part of the price of the Kia. *See In re McPhilamy*, 2017 WL 435802, at *7.

Turning to the second prong of the "purchase-money obligation" definition, this Court considers whether the loan in Claim No. 4 was value given to acquire the Kia. *In re Dale*, 582 F.3d at 573. In *McPhilamy*, the debtors entered into several of the cross-collateralized loans between eight and ten months after refinancing a motor vehicle. 2017 WL 435802, at *8. The loans in question in *McPhilamy* came after the debtors refinanced a personal motor vehicle with a purchase-money security interest loan. *Id.* at 5. The case at bar differs because Claim No. 4 involves a loan that paid off a non-purchase money loan using the Kia as collateral. *See* [Claim No. 4-1]. Debtors' Schedule D lists Claim No. 4 as a "non-purchase money security" interest. [ECF No. 1 at 33]. Further, the loan proceeds were paid directly to Springleaf and not to a motor-vehicle lender. [Claim No. 4-1 at 4]. Debtor already maintained rights in and exclusive use of the Kia prior to entering the loan in Claim No. 4. [ECF No. 27 at 1] (noting that "Debtors gave a title in a used 2008 Kia Sorento as collateral for the loan"). Rather than seeking to refinance a loan with a vehicle lender, Debtors instead used Claim No. 4 to pay off a non-purchase money security interest loan and offered title to the Kia as collateral. *See* [Claim No. 4-1]. Thus, Claim No. 4 cannot be considered to be value given to acquire the Kia. *See In re McPhilamy*, 2017 WL 435802, at *8. *But see In re Dale*, 582 F.3d at 574. Similar to the Cross-Collateralized Loans, there is no evidence before this Court to demonstrate a close nexus

between Debtors' acquisition of the Kia and Claim No. 4.  *In re McPhilamy*, 2017 WL 435802, at *8.  As in *McPhilamy*, this Court cannot find that Claim No. 4 represents a loan given for value to enable the Debtors to acquire rights in the Kia to be a "purchase-money obligation" without the necessary "demonstrated close nexus."  *Id.  But see In re Dale*, 582 F.3d at 575.

Therefore, Claim No. 4 fails to satisfy either prong of the "purchase-money obligation" definition of Tex. Bus. & Com. Code § 9.103(a).  *See In re Dale*, 582 F.3d at 573–74.  Thus, as Claim No. 4 is not a "purchase-money obligation," it cannot be a "purchase-money security interest" as required by the hanging paragraph.  *See id.*; *In re McPhilamy*, 2017 WL 435802, at *10.  Accordingly, Claim No. 4 is properly treated under the Plan because it is not subject to the hanging paragraph.  *See id.*

## V. CONCLUSION

Having recently determined the applicability of the hanging paragraph to purchase-money security interests, this Court is faced with the task of concluding whether a chapter 13 plan properly treats various loans secured by a personal motor vehicle.  In this case, Debtors seek to confirm a Plan that treats loans cross-collateralized with a personal motor vehicle and a loan secured by title in the personal vehicle, acquired within 910 days of filing bankruptcy, as unsecured claims.  [ECF No. 2 at 7].  This Court finds that the SSFCU loans are not subject to the hanging paragraph and may be bifurcated and crammed down in Debtors' Plan.  *See In re McPhilamy*, 2017 WL 435802, at *10.  The hanging paragraph does not apply to any of the SSFCU loans because the creditor does not have a purchase-money security interest as required by the statute.  *Id.*; § 1325(a)(5); Tex. Bus. & Com. Code § 9.103(a).  Accordingly, the Debtors' chapter 13 plan, [ECF No. 2], is hereby **CONFIRMED**.  Additionally, the Trustee's Motion to Dismiss or Convert, [ECF No. 23], is hereby **DENIED**.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED 02/08/2017.

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge